## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Michelle Cortez Gomez, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) No. 23-678 |
| vs. | ) JURY TRIAL DEMANDED ) |
| KOHL'S CORPORATION and KOHL'S, INC., | ) ) ) |
| Defendants. | ) ) |

## CLASS ACTION COMPLAINT

Plaintiff Michelle Cortez Gomez ("Plaintiff"), by her attorneys, individually and on behalf of herself and others similarly situated, alleges upon personal knowledge as to herself and her acts stated herein and, as to all other matters, upon investigation of her counsel, as follows:

## SUMMARY AND PRELIMINARY STATEMENT

1.      This is a class action brought by Plaintiff, individually and on behalf of all others similarly situated (collectively referred to as "Class Members" or the "Class"), against Kohl's Corporation and its wholly-owned operating subsidiary, Kohl's, Inc. (collectively "Kohl's" or "Defendants").

2.      Plaintiff generally alleges that Kohl's violates Wisconsin law by making false and misleading price comparisons, and offers of discounts, in connection with the advertisement and sale of its merchandise.

3.      The false and misleading price comparisons appear in a variety of places, including on price tags affixed to items, on signs posted in Kohl's retails stores, in print advertisements, in mailing circulars, and on the Kohl's website—Kohls.com. Through these mediums, Kohl's represents that consumers can buy products at a substantial discount from their "Regular" or "Original" prices. In reality, and as confirmed by an investigation by Plaintiff's counsel, the purported "sales" and discounts are illusory, fictitious and in violation of Wisconsin law because the higher comparison prices are arbitrary and inflated prices that do not reflect the actual prices at which Kohl's intends to sell its products, or the actual prices at which Kohl's has recently and regularly sold or offered to sell its products in the regular course of its business.

4.      As a direct result of Kohl's false and misleading price comparisons, Plaintiff and the Class have suffered monetary damages in multiple ways. For example, Plaintiff and the Class have not received the benefit of the bargain that Kohl's promises them because the products they purchased from Kohl's do not have the higher value and worth that Kohl's represents they have through its false and misleading "Regular" and "Original" price comparisons. In addition, the false and misleading price comparison scheme creates a higher demand for Kohl's products than would occur absent the misrepresentations, which in turn has caused Plaintiff and the Class to pay artificially and inflated prices for Kohl's products that would not exist absent the false price-comparison scheme. Kohl's false price-comparison scheme also caused Plaintiff and the Class to buy items, and spend money, they would not otherwise buy/spend absent the false price comparisons.

5.      The Federal Trade Commission ("FTC") describes false former pricing schemes, similar in all material respects to the scheme employed by Kohl's, as both deceptive and injurious:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual,

bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

16 C.F.R. § 233.1(a).

6.      The FTC provides the following example of deceptive conduct, which is materially indistinguishable from Kohl's conduct:

John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain", Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level--$7.50--and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

16 C.F.R. § 233.1(C).

7.      Wisconsin law explicitly forbids such practices. It generally provides that the use of arbitrary and inflated comparison prices "can only serve to deceive or mislead" consumers and when used "as an inducement to the sale of [merchandise] is injurious to both the consuming public and competitors, and is an unfair trade practice and unfair method of competition" as a matter of law. ATCP 124.01. More specifically, Wisconsin law prohibits a seller, such as Kohl's, from advertising any price comparison based on a price other than one at which the seller actually sold the same merchandise in the 90 days immediately preceding the advertisement, or one at which the seller actually offered the merchandise for sale for at least 4 weeks during the 90 days immediately preceding the advertisement. ATCP 124.04(1) and 124.05(1). But, the higher comparison price cannot be based on unusual and sporadic transactions that do not represent the

3

seller's normal selling price. Instead, Wisconsin law also prohibits retailers from making just a few or intermittent sales at the higher comparison price in order to create the illusion of a discount—precisely the conduct that the FTC explains is a "false claim" under 16 C.F.R. § 233.1(C). Specifically, Wisconsin law prohibits a retailer from advertising a higher comparison price that "exceeds the seller's cost plus the percentage markup **regularly used** by the seller in the **actual sale** of such property or services, or consumer property or services of similar class or kind, in the seller's **recent and regular course of business**." ATCP 124.04(2) and 124.05(2) (emphasis added). In short, Wisconsin law demands that a higher comparison price reflect the "regular" price at which "actual sale[s]" occurred "in the seller's recent and regular course of business." *Id.* As detailed below, Kohl's systematically violates that law because it offers so many discounting mechanisms that its customers hardly, if ever, pay the full comparative price which, in turn, means that Kohl's comparison prices are not equal to but, instead, always **exceed** Kohl's "cost plus . . . the percentage markup **regularly** used by [Kohl's] in the **actual sale** of such property." *Id.* (emphasis added).

8.     These laws exist because legislatures know that consumers rely on higher comparison prices (such as "Regular" and "Original" prices) to convey information about a product's market value, and that false price comparisons are an effective way to sell products that consumers would not otherwise buy, and to cause consumers to pay more for a product than they would normally pay, absent the false price comparison. Indeed, academic research shows that reasonable consumers infer that a "Regular" or "Original" price is a price at which the item previously and regularly sold at that retailer. Compeau, Larry, Joan Lindsey-Mullikin, Dhruv Grewal and Ross Petty, (2004) "Consumers' Interpretations of the Semantic Phrases Found in Reference Price Advertisements," *Journal of Consumer Affairs*, 38 (Summer), 178-187.

9.      Numerous other studies show that consumers are much more likely to purchase an item if they are told that it is being offered at a price less than the price at which the seller or its competitors have recently sold the product. In other words, consumers are more likely to purchase an item if they are told that an item normally sells at a higher price (and is therefore worth more) than what they are currently being asked to pay for it. *See, e.g.,* Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. of Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ("[b]y creating an impression of savings, the presence of a higher reference price enhances [consumers'] perceived value and willingness to buy [a] product."); *see also* Compeau & Grewal, in Comparative Price Advertising: Believe It Or Not, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002) (noting that "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal," and concluding that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."); Joan Lindsey-Mullikin & Ross D. Petty, Marketing Tactics Discouraging Price Search: Deception and Competition, 64 J. of Bus. Research 67 (January 2011) (concluding that "[r]eference price ads strongly influence consumer perceptions of value"); Praveen K. Kopalle & Joan Lindsey-Mullikin, The Impact of External Reference Price On Consumer Price Expectations, 79 J. of Retailing 225 (2003) (concluding that "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions"); Dr. Jerry B. Gotlieb & Dr. Cyndy Thomas Fitzgerald, An Investigation Into the Effects of Advertised Reference Prices On the Price Consumers Are Willing To Pay For the Product, 6 J. of App'd Bus. Res. 1 (1990) (concluding that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price").

10.     As alleged herein, Kohl's has routinely and systematically violated Wisconsin's prohibitions against false price comparisons because its "Regular" and "Original" comparison prices are not the prices at which Kohl's regularly sells its products. Plaintiff and members of the proposed Class (as defined below) were exposed to and victims of Defendants' false price comparisons when they purchased products from Kohl's. Plaintiff and the Class did not receive products worth the amounts reflected by Kohl's higher comparison prices, and therefore did not receive the benefit of the bargain that Kohl's advertised they would receive through its use of artificially inflated and fictitious comparison prices. Instead, Plaintiff and members of the Class received items of lesser value than what Kohl's promised them, while Kohl's was unjustly enriched by selling more products, and at higher prices, than it otherwise would be able to sell absent the false price-comparison advertising scheme.

## PARTIES

11.     Plaintiff Michelle Cortez Gomez ("Cortez") is and at all relevant times herein a natural person and permanent resident of Madison, Wisconsin. During the proposed Class Period (defined below), and while she was in Wisconsin, Ms. Cortez bought numerous products from the Kohl's website for personal, family or household purposes at an advertised discount from an advertised comparison price.

12.     Defendant Kohl's Corporation is and, at all relevant times herein was, a Wisconsin corporation with its headquarters/principal place of business located at N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin.

13.     Defendant Kohl's, Inc. is and was, at all relevant times herein, a Delaware corporation with its headquarters/principal place of business located at N56 W17000 Ridgewood

Drive, Menomonee Falls, Wisconsin. Kohl's Inc. is wholly owned by and serves as the primary operating subsidiary of Defendant Kohl's Corporation.

14.     Defendants aided and abetted, encouraged and rendered substantial assistance to each other in committing the unlawful and deceptive acts alleged herein. In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of the wrongdoing and realized that the conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

15.     Each Defendant was the agent, representative, partner, parent company, subsidiary or affiliate of the other Defendant and was acting within the authority of such agency, representation, partnership, or affiliation while doing or omitting to do the acts alleged herein and with the permission, approval, consent, and/or ratification of all other Defendants.

16.     There exists, and at all times herein mentioned existed, a unity of interest and ownership between all of the Defendants, such that all individuality and separation ceased and Defendants became the alter egos of the other Defendants and their principals. Whenever in this complaint a reference is made to any act or omission of a particular Defendant, such allegation shall be deemed to mean that said Defendant, and its officers, directors, agents, representatives, and employees did authorize such act while actively engaged in the management, direction or control of that Defendant, and while acting within the course and scope of their employment or agency.

## JURISDICTION AND VENUE

17.     Plaintiff and/or other putative Class Members have different citizenship from Defendants.

7

18.     The aggregate amount of damages incurred by Plaintiff and the Class (as defined below) exceeds $5,000,0000.

19.     Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. Section 1332, subdivision (d).

20.     As set forth herein, the Defendants have sufficient contact and presence within the State of Wisconsin to confer this Court with personal jurisdiction over each Defendant. Kohl's is incorporated and maintains its principal place of business in Wisconsin, and it owns, operates, licenses and otherwise controls approximately 41 retail stores in the State of Wisconsin, and it owns its corporate headquarters in Wisconsin. Kohl's also operates its website, Kohls.com, from within the state of Wisconsin.

21.     Venue is proper in this Court under 28 U.S.C. Section 1391 because Defendants transact business in this judicial district, and the claims of Plaintiff and other putative Class Members arose in this judicial district. Plaintiff resides in this judicial district, viewed Defendants' false and misleading advertisements in this judicial district, and purchased items at Defendants' stores located in this judicial district.

## GENERAL ALLEGATIONS

22.     Kohl's is a nationwide retailer that operates over 1,100 stores and a website (www.Kohls.com). According to its latest Form 10-k filed with the United States Securities and Exchange Commission, Kohl's sells both national brands and private brands "that are available only at Kohl's." Kohl's private branded products generally have lower selling prices, but higher gross margins than its national branded products. All products are sold at the stores and/or website owned, operated, licensed or otherwise controlled by Kohl's. As such, Kohl's defines, sets and

controls all prices for these products, and its internal records of historical transactions can be relied on to establish both prior transaction prices and the actual market value for each such item.

23.     Kohl's affixes (or causes its manufacturers to affix) price tags on all (or virtually all) of its products. Kohl's displays the same prices on its website—Kohls.com. While Kohl's often refers to these prices as its "Regular" or "Original" prices, those prices are not the actual, bona fide prices at which Kohl's has recently and in good faith sold such items in substantial quantities; they are not the prices at which Kohl's has recently and in good faith offered to sell such items for a substantial period of time; and they are not the prices at which Kohl's has a good faith or bona fide intention of selling any meaningful quantity of products in the regular course of its business. In short, the so-called "Regular" and "Original" prices are nothing other than artificially-inflated markups over the prices at which Kohl's actually expects to sell its products.

24.     Nevertheless, throughout the Class Period, Kohl's has routinely advertised (through in-store signs and advertisements, on-line, emails and print advertisements) that its products are available for purchase at significantly marked-down "sale" prices as compared to its higher "Regular" and "Original" prices. Alternatively, Kohl's advertises BOGO (buy-one-get-one) offers by which consumers can purportedly buy one item at its "Regular" price and get another at a deep discount (i.e., a percentage off) from the "Regular" price.

25.     At checkout, Kohl's perpetuates the deception by providing customers with receipts (or order confirmations for online transactions) that show both the advertised higher comparison price (sometimes referred to as the "item" price), as well as the lower "sale" price (sometimes referred to as "Your Price") and the total amount of money that the customer purportedly "saved" by paying less than the higher comparison price(s). Through these practices, Kohl's represents that its products have a current value and worth equal to the higher comparative

price, and that its customers are saving a specific amount of money, calculated to the penny, by paying less than the current value of the product.

26.   In fact, recent sworn testimony by a designated corporate representative in another case confirms that Kohl's intends for its comparative ticket prices to represent the current value of its merchandise at the time of transaction. Specifically, Jane Koniczka, who was previously designated to testify on Kohl's behalf with respect to several issues, including the meaning of terms and representations on Kohl's receipts and order confirmations, testified that the "savings" listed on an order confirmation refers to "the difference between the ticket price of each item . . . and the price [paid]."[1] Ms. Koniczka further confirmed that Kohl's intends for the higher comparison prices to represent the value (or "worth") of Kohl's products at the time of sale, which can be calculated by simply adding the purported "savings" to the total purchase price. *Id.* at 11-12. In short, Ms. Koniczka confirmed that Kohl's intends to represent the ***current*** value of its products through its ticket prices and that it tells its customers they "saved" buy paying less than the current value through a combination of reduced "sale" prices, promotions and other discounts. *Id.*

27.   In reality, the purported "savings" and discounts are all false, misleading, and in violation of Wisconsin law because Kohl's does not regularly sell its products in substantial quantities at the higher advertised comparison prices; nor does it make good faith offers to sell its merchandise at those prices for a substantial period of time. In fact, Kohl's sells, at most, only a tiny fraction of its products at their purported "Regular" or "Original" price. And, many products are ***never*** sold at the advertised comparison prices.

---

[1] *Hennessey v. Kohl's Corp.*, Case No. 4:19-cv-01866-DDN (E.D. Mo.), Doc. 206-2 at 8-10. A true and correct copy of the quoted portions of Ms. Koniczka's testimony is attached hereto as Exhibit 1.

28.     These facts are confirmed by an investigation by Plaintiff's counsel, who have monitored Kohl's online product offerings since May, 2022. Specifically, using a proprietary application, counsel kept track of items offered on sale via the Kohl's website, which enabled them to create a timeline of, among other things, the advertised comparison prices, sale prices, and date of products offered on sale. Based on that monitoring, counsel was able to aggregate data and confirm that Kohl's regularly subjects most, if not all, of its product offerings to comparison-price sales, with only few, sporadic time periods where products are not offered on sale. For example, between May 22, 2022 and August 20, 2023, the data shows that at least 9,007 products listed on the website were on sale at least 46 days out of every 90-day window (i.e., more than 50% of the time), and some products were perpetually on sale for as many as 90 days out of every 90-day window. In short, the data shows that Kohl's turns the concept of a "sale" on its head: for the vast majority of products, the so-called "sale" price is the regular and normal price, while the higher advertised "Regular" or "Original" comparison price is the temporary and unusual exception.

29.     Kohl's also offers a constant array of promotions, such as store-wide sales, BOGO ("buy one get one x% off"), "Kohl's cash," coupons, and other discounts associated with its credit cards, such that the average and most common actual selling price (and therefore market value) of each item is not just below the advertised "Regular" price, but also almost always below the purported "sale" price. In other words, a consumer who purchases a product at the advertised "sale" price actually pays **more** than what most people pay for that same item. This conclusion is confirmed by a sworn declaration submitted in another case by a Kohl's designated corporate representative, Kristine Vranak, who explains that Kohl's offers such a consistent and wide array of discounts that the supposedly discounted "sale price at Kohl's is **rarely** the out-the-door price

that a Kohl's shopper actually pays because Kohl's frequently offers promotions and incentives that reduce the purchase price **even further**."[2]

30.     Two corollaries necessarily follow from Ms. Vranak's admission. *First*, a customer who pays the "sale" price is actually paying *more* than what most customers pay for the same item—because other promotions and incentives typically "reduce the purchase price even further" below the "sale" price. *Id.* Put differently, even the supposedly discounted "sale" price exceeds the amount most customers actually pay, and it therefore represents an artificial and arbitrary markup over the amount Kohl's actually expects most customers to pay. *Second*, as detailed above, Kohl's rarely, if ever, offers its products at the purported higher comparison prices. If it is already rare that Kohl's *offers* its products at the higher comparison price (the "off-sale" price), and if most customers use coupons and other promotions to reduce the final out-the-door price *below* the "sale" price, it is then doubly rare—i.e., it almost never happens—that a customer actually pays the so-called "Regular" or Original" price. Accordingly, Kohl's "sale" prices and higher comparison prices **both** necessarily exceed the markup over costs that Kohl's regularly uses or expects to receive in the actual sale of its products in the regular course of its business.

31.     Since the higher advertised comparison prices materially overstate the actual market value and worth of Kohl's private and exclusive branded products, consumers like Plaintiff and the Class who buy these products do not receive the benefit of the bargain Kohl's promises them, and they suffer damages because they do not receive items that have the value or worth that Kohl's represents they have. Instead, Plaintiff and the Class received products that, based on

---

[2] Declaration of Kristine Vranak in Support of Defendant Kohl's Department Stores, Inc.'s Opposition to Plaintiff's Motion for Class Certification, dated November 9, 2015, at ¶9 (filed in *Russell v. Kohl's Department Stores, Inc.*, Case No. 5:15-CV-01143-RGK-SP (C.D. Cal.)) (emphasis added). A true and correct copy of Ms. Vranak's declaration is attached hereto as Exhibit 2.

actual, historical selling prices, have a market value that was, at the time of purchase, significantly below the advertised former comparison price and, in most cases, below the "sale" price.

32.     Through its use of arbitrary and inflated comparison prices, Kohl's intentionally and/or negligently misrepresented and/or failed to disclose material information concerning the actual value or worth of the products it sold to Plaintiff and the Class. In publishing, displaying, and otherwise communicating and disseminating the higher comparison prices, and the advertised discounted "sale" prices, and in concealing the true information, Kohl's intended to induce Plaintiff and members of the Class to purchase its products in quantities and/or at prices at which they would not otherwise have agreed.

33.     Kohl's knew or should have known that its price-comparison advertisements conveyed false information to consumers, including Plaintiff, about the value and worth of the merchandise Kohl's sells. Academic literature and consumer studies show that false price comparisons influence consumer behavior; that reasonable consumers are likely to infer that an advertised "Regular" or "Original" price is a comparison to a price of the same item recently sold at the same retailer; that higher comparison prices influence consumer perception of value and purchasing decisions; and that if a comparison price is fictitious or inflated, it is likely to deceive consumers by creating illusions of savings that the consumer thinks they need to take advantage of by purchasing the product now rather than risk losing the purported savings or continuing to look for a better deal elsewhere.

34.     Kohl's further knew or should have known that, as discount sizes increase, consumers' perceptions of value and their willingness to buy the product increases, while their intention to search for a lower price decreases. Accordingly, information concerning a product's "Regular" or "Original" price is a material term that influences consumer behavior.

35.     At their time of purchase, Plaintiff and members of the Class saw and/or were exposed to Defendants' price-comparison advertising scheme.

## **PLAINTIFF WAS A VICTIM OF KOHL'S PRACTICES**

36.     Plaintiff has been frequent Kohl's shopper for a number of years. After being exposed to and influenced by Defendants' price-comparison advertising scheme, she purchased numerous Kohl's products from the Kohl's website for personal, family or household purposes during the Class Period.

37.     In making said purchases, Plaintiff was misled as to the higher value of the products that Kohl's advertised, and she did not receive products worth the amount that Kohl's represented she would receive through its false and misleading price-comparison advertising scheme. Absent the false price-comparison scheme, Plaintiff would not have bought the merchandise she bought from Kohl's and/or she would not have paid the prices she paid to purchase such merchandise.For example, on or about March 19, 2022, Ms. Cortez shopped on the Kohl's website and purchased the following products:

| SKU | ITEM DESCRIPTION | ADVERTISED "REGULAR" or "ORIGINAL" PRICE | "SALE" PRICE (also stated as "Your Price") |
|---|---|---|---|
| 34100594 | Adidas 3-Stripe Leggings | $35.00 | $26.25 |
| 33435964 | Adidas Grand Court Women's Sneakers | $64.99 | $48.74 |
| 71275152 | Shark Rocket Cordless Stick Vacuum (IX142) | $299.99 | $229.99 |

38.     In reality, and for the reasons discussed above, the advertised "Regular" or "Original" comparison price of each of these items was false, misleading, and in violation of

14

Wisconsin law because it did not represent the actual, bona fide price at which Kohl's had previously offered or sold those products, and it exceeded the cost plus percentage markup regularly used by Kohl's in the actual sale of those products in Kohl's regular course of business.

39.     Thus the prevailing market price, and therefore actual value of each item was materially lower than the value Kohl's represented it to be through its false and misleading "Regular" or "Original" prices.

40.     Ms. Cortez suffered monetary damages because she did not receive products worth the higher values Kohl's represented she would receive, and she did not receive the full discount or benefit of the bargain that Kohl's promised. The order confirmation Ms. Cortez received from Kohl's in connection with this transaction prominently states that she "sav[ed]" $202.93 including "free" shipping supposedly worth $8.95, plus $10 in "Kohl's Cash" and $88.98 associated with another alleged promotion, for a final transaction price of $217.33, including tax. A true and correct copy of the order confirmation that Ms. Cortez received from Kohl's in this transaction is attached hereto as Exhibit 3.

41.     For the same reasons articulated above, the higher advertised comparison prices were false, misleading and did not reflect the actual value of each item. Therefore, Kohl's representation that Ms. Cortez received merchandise worth $399.98 ($35.00 + $64.99 + $299.99) and "saved" $202.93 were both false and misleading. In fact, Ms. Cortez did not receive products worth $399.98, and she did not "save" $202.93 as Kohl's falsely represented.

42.     Similarly, on or about May 6, 2023, Ms. Cortez shopped on the Kohl's website and purchased a JBL Flip 6 Portable Waterproof Speaker, SKU No. 54603646, advertised with a "Regular" price of $129.99 and a "sale" price of $99.99.  Her order confirmation says that she

15

"saved $30.00" based on the difference between the supposed "Regular" price and the lower "sale" price. A true and correct copy of her order confirmation is attached hereto as Exhibit 4.

43.     However, based on the investigation of Plaintiff's counsel, it appears that Kohl's only first began offering the JBL speaker in May, 2023, and it was immediately offered at the discounted "sale" price before ever being offered at the higher comparison ticket price. Moreover, between May 4, 2023 (the first day the speaker appears to have been offered) and August 20, 2023 (a period of 108 days), the JBL speaker was advertised on sale at least (and probably more than) 80 days (74% of the time).

44.     For the same reasons articulated above, the higher advertised $129.99 "Regular" price was false, misleading and did not reflect the actual value of the item purchased. In fact, based on the investigation of Plaintiff's counsel, it appears that Kohl's did not even offer, let alone actually sell, the speaker at the so-called "Regular" $129.99 price at *any* time prior Ms. Cortez's purchase.  As a result, Kohl's representation that she received merchandise worth $129.99 and "saved" $30.00 were both equally false and misleading.

45.     As yet another example, on November 26, 2022, Ms. Cortez visited the Kohl's website and purchased a "Juniors' Plus Size SO" Pocket Tee advertised with a "Regular" price of $18.00 and a "Sale" price (also referenced as "Your Price") of $9.99. In connection with that transaction, she also used $5.08 worth of "Kohl's Cash" resulting in an out-the-door price of $5.18 (including tax of $0.27). The order confirmation from that transaction represents that Ms. Cortez "saved" $13.09 ($8.01 in a "sale" discount, plus $5.08 in Kohl's cash). A true and correct copy of the order confirmation for this transaction is attached hereto as Exhibit 5.

46.     However, the investigation of Plaintiff's counsel shows that between May 26, 2022 and November 26, 2022 (the date of purchase), the product was on sale *at least* 122 out of 182 days (67% of the time).

47.     The transactions described above are only a few examples of the products that Ms. Cortez purchased from Kohl's during the Class Period based on similar false and misleading representations concerning those products' "Regular" or "Original" prices. Ms. Cortez was similarly injured as a result of Kohl's false and deceptive price comparisons with respect to all of her purchases and, by detailing the above transactions, she does not in any way intend to limit the scope of her claims or request for relief to the detailed transactions. Rather, Ms. Cortez expressly seeks damages for all of her similar transactions with Kohl's and, if necessary, she will amend or seek leave to amend this Complaint to detail such additional transactions after appropriate discovery.

48.     Ms. Cortez would like to shop at Kohl's again in the immediate future, but she currently cannot trust that Kohl's will advertise truthful price comparisons in compliance with Wisconsin law. If Kohl's agrees to voluntarily change its practices, or if Kohl's is ordered to do so by a court of competent jurisdiction, such that she can reasonably trust that Kohl's price comparison advertisements will comply with Wisconsin law, Ms. Cortez will return to shop at Kohl's.

49.     Kohl's deceptive practices are wide-spread over the course of many years. Plaintiff therefore believes that hundreds or thousands of similar and materially indistinguishable acts of misleading, untrue, false and deceptive price-comparison advertising were committed by Kohl's with respect to Class Members' purchases on the Kohl's website during the Class Period.

50.     Plaintiff asserts that Defendants continue to employ unfair, deceptive, false, misleading, and untrue advertising practices as alleged herein. Plaintiff, on behalf of herself and the putative Class, seeks all actual damages, punitive damages, injunctive relief, costs, attorneys' fees, and any other relief the Court deems proper.

## CLASS DEFINITION

51.     The Class is defined as follows:

"All persons who, while in the United States, and any time between November 3, 2020 and May 21, 2023 (the "Class Period"), purchased from the Kohl's website for personal, family or household purposes one or more items advertised with a "sale," "clearance," or percentage off price compared to a higher "Original" or "Regular" price and who have not received a refund or credit for their purchase(s)."[3]

Excluded from the Class are Defendants, as well as their officers, directors, and employees. Also excluded is any judge assigned to this matter, as well as their immediate family members. Further excluded is any person who, on or before May 21, 2023, served Kohl's with a Notice of Dispute pursuant to the arbitration agreement in the Kohl's Terms & Conditions that required that "the party seeking arbitration must first notify the other party of the Dispute in writing at least 30 days in advance of initiating the arbitration," which notice "must describe the nature of the claim and the relief being sought."

---

[3] To be clear, this action only seeks redress for purchases made on the Kohl's website during the Class Period and excludes transactions made outside the Class Period and/or at Kohl's brick and mortar stores.

52.     Plaintiff reserves the right to amend this Class definition, including but not limited to the addition of any subclasses and/or modification of the Class Period, at any time based upon further investigation, information and/or discovery.

## CLASS ALLEGATIONS

53.     Plaintiff seeks certification of the Class pursuant to Federal Rules 23(a) and 23(b)(3) and may also, or in the alternative, seek certification of subclasses and/or particular issues pursuant to Federal Rules 23(c)(4) and (5).

54.     The members of the Class identified above are so numerous that joinder of all members is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, the individual identities of the individual members of the Class are ascertainable through Defendants' records and/or by public notice and self-identification.

55.     There is a well-defined community of interest in the questions of fact and law involved affecting the members of the Class. The questions of law and fact common to the members of the Class predominate over questions affecting only individual Class Members, and include, but are not limited to, the following:

a.     Whether Kohl's made false or misleading statements in connection with its price-comparison advertising;

b.     Whether Kohl's price-comparison advertising regarding its private and exclusive branded products was false, deceptive, misleading or unlawful under Wisconsin law;

c.     Whether the "Regular" or "Original" prices advertised by Kohl's were actual and bona fide, or fictitious under Wisconsin law;

d.     Whether and how frequently Kohl's previously sold products purchased by the Class at the higher advertised comparison prices;

e.     Whether Kohl's offered products for sale at the higher comparison prices for at least 4 weeks during the 90 days immediately preceding the date on which it advertised the higher comparison prices;

f.     Whether Kohl's had a bona fide intent of selling a reasonable quantity of its private and exclusive branded items at the advertised "Original" or "Regular" prices;

g.     Whether the higher comparison prices advertised by Kohl's exceeded Kohl's cost plus percentage markup regularly used in the actual sale of such products in Kohl's recent and regular course of business.

h.     Whether the "Original" or "Regular" prices advertised by Kohl's overstate the fair market value of the items so advertised;

i.     Whether Plaintiff and putative Class Members have suffered damages as a result of Kohl's conduct;

j.     Whether Plaintiff and the Class received the benefit of the bargain that Kohl's advertised they would receive;

k.     Whether Plaintiff and the members of the Class are entitled to injunctive relief;

l.     Whether Plaintiff and the members of the Class are entitled to pre-judgment and post-judgment interest;

m.     Whether Plaintiff and the members of the Class are entitled to punitive damages; and

n.    Whether Plaintiff and the members of the Class are entitled to an award of reasonable attorneys' fees and costs.

56.    Plaintiff's claims are typical of the claims of the other members of the Class which all arise from the same operative set of facts involving Kohl's false price-comparison advertising scheme and are entitled to damages of the same character.

57.    Plaintiff will fairly and adequately protect the interests of the Class and has no known conflicts of interest. Plaintiff has retained counsel experienced in handling consumer class actions of the type alleged herein.

58.    Prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class Members and would lead to repetitious trials of the numerous common questions of fact and law in the State of Wisconsin; and could lead to the establishment of incompatible standards of conduct for Defendants. Such individual adjudications would be, as a practical matter, dispositive of the interests of, or would substantially impair or impede the interests of, the other Class Members. Plaintiff is not aware of any difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

59.    Defendants have acted or have refused to act on grounds that generally apply to the Class and final injunctive relief is appropriate as to the Class as a whole. Specifically, Defendants have advertised misleading and untrue comparison prices in violation of Wisconsin law, and injunctive relief is necessary to avoid ongoing violations in the future.

60.    The common questions of law and fact predominate over any questions affecting only individual members. Furthermore, a class action is a superior method for fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply

21

with applicable law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendants is small relative to the cost of maintaining an action.

61.     Proper and sufficient notice of this action may be provided to the Class Members through methods best designed to provide adequate notice, including potentially a combination of electronic mail and/or postal mail, internet website, and/or publication.

62.     Furthermore, the Class Members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Absent certification of this action as a class action, Plaintiff and the members of the Class will continue to be damaged, thereby allowing Defendants to retain the proceeds of their ill-gotten gain.

63.     As a direct result of bringing the allegations herein to Defendants' attention, Plaintiff has or will make substantial and important changes to Defendants' advertising practices. Thus, Plaintiff has or will enforce an important public right affecting the public interest, conferring a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. Private enforcement of the laws-in-question is both necessary and financially burdensome for Plaintiff.


## COUNT I

**Unlawful Practices in Violation of Wisconsin State Annotated Code Section 100.20,**

**Methods of Competition and Trade Practices**

64.     Plaintiff incorporates and realleges each and every preceding paragraph as though fully set forth herein.

65.     As alleged herein, Plaintiff and the Class purchased from Kohl's various products for personal, family or household purposes. Kohl's advertised that these products were on "sale" at a substantial discount compared to Kohl's "Regular" or "Original" comparison prices. In reality the "sale" prices were false and misleading because they were not reductions from bona fide prices in effect immediately prior to the advertised sales, and the higher "Regular" and "Original" prices were false and misleading because they were not prices at which Kohl's had recently sold such products in substantial quantities, or prices at which Kohl's had recently offered to sell such products for a substantial period of time.

66.     Kohl's Terms & Conditions in effect during the Class Period provide that any advertising by Kohl's, and purchases by consumers, "shall be governed by the laws of the State of Wisconsin without giving effect to its conflict of laws provisions." Wisconsin law therefore applies to the claims of Plaintiff and the Class.

67.     Wis. Stat. § 100.20(1) provides that, "[m]ethods of competition in business and trade practices in business shall be fair. Unfair methods of competition in business and unfair trade practices in business are hereby prohibited."

68.     The Department of Agriculture, Trade and Consumer Protection is authorized under § 100.20(2) to "issue general orders forbidding methods of competition in business or trade practices in business which are determined by the department to be unfair." The rules and regulations governing the requirements for advertising price comparisons are set forth under Wis. Admin. Code, Dept. of Agriculture, Trade and Consumer Protection ("ATCP") 124 – Price Comparison Advertising, under the authority of Wis. Stat. § 100.20(2). A person who suffers damages because of a violation of ATCP 124 has a right to recover twice the amount of pecuniary

23

loss, together with costs, including reasonable attorneys' fees under Wis. Stat. § 100.20(5). ATCP

124.

69.   ATCP 124.01 is entitled Declaration of Policy and explains that:

Price comparison advertising is a form of advertising commonly used in the sale or offering for sale of consumer property or services whereby current prices are compared with former or future prices or other stated values to demonstrate price reductions or cost savings. While price comparisons accurately reflecting market values in the trade area provide consumers with useful information in making value comparisons and market buying decisions, price comparisons based on arbitrary or inflated prices or values can only serve to deceive or mislead. Further abuse occurs when sellers fail to disclose material information essential to consumer understanding of the comparisons made. The use of arbitrary or inflated price comparisons in violation of this rule as an inducement to the sale of consumer property or services is injurious to both the consuming public and competitors, and is an unfair trade practice and unfair method of competition under s. 100.20, Stats.

ATCP 124.01.

70.   ATCP 124.02 is entitled "Definitions" and provides, in part:

(1)  "Advertisement" is any oral, written or graphic statement or representation made in connection with the solicitation of business in any manner by a seller and includes, without limitation because of enumeration, statements and representations contained on any label, tag or sign attached to, printed on, or accompanying consumer property, or printed in a catalog or any other sales literature or brochure.

(2)  "Consumer property or services" means any personal property or services sold primarily for personal, family, or household use and not for resale or for use or consumption in a trade or business.

\*\*\*

(5)  "Price comparison" means the direct comparison, expressed wholly or in part in dollars, cents, fractions or percentages, in any advertisement, of a seller's current price for consumer property or services with any other price or statement of value for such property or services, whether or not such prices are actually stated in the advertisement. The term includes, but is not limited to, such comparisons as "50% off," "save 1/3," "Half price sale," "Was $20, now half price," "$10 value, now $8," or "Was $7, now $6."

ATCP 124.02.

71.     ATCP 124.03 is entitled "Price comparison; general" and provides, in part: "No price comparison may be made by a seller: (1) Based on a price other than one at which consumer property or services were sold or offered for sale by the seller or a competitor, or will be sold or offered for sale by the seller in the future, in the regular course of business in the trade area in which the price comparison is made."

72.     ATCP 124.04 is entitled "Seller's actual sale prices" and provides, in part: "(1) No price comparison may be made by a seller based on a price at which consumer property or services were sold by the seller unless: (a) The price is a price at which such property or services were actually sold by the seller in the last 90 days immediately preceding the date on which the price comparison is stated in the advertisement. . . . (2) Notwithstanding sub. (1), no price comparison under this section may be made by a seller based on a price which exceeds the seller's cost plus the percentage markup regularly used by the seller in the actual sale of such property or services, or consumer property or services of similar class or kind, in the seller's recent and regular course of business."

73.     ATCP 124.05 is entitled "Seller's offered prices" and provides, in part: "(1) No price comparison may be made by a seller based on a price at which the seller has offered for sale but has not sold consumer property or services unless: (a) the price is a price at which such property or services were actually offered for sale by the seller for at least 4 weeks during the last 90 days immediately preceding the date on which the price comparison is stated in the advertisement . . . (2) Notwithstanding sub. (1), no price comparison may be made by a seller based on a price which exceeds the seller's cost plus the percentage markup regularly used by the seller in the actual sale of such property or services, or consumer property or services of similar class or kind, in the seller's recent and regular course of business."

25

74.    Kohl's violates ATCP 124 and ATCP 125, and therefore violates Wis. Stat. § 100.20, because its price-comparison advertising scheme mirrors that which is prohibited by federal regulations promulgated by the FTC, including 16 C.F.R. § 233.1(a). Specifically, and as detailed above, Kohl's rarely if ever offers its products at the higher comparison prices, and it almost never actually sells products at the higher comparison prices. As a result, the higher comparison prices necessarily exceed Kohl's cost plus percentage markup regularly used in the actual sale of Kohl's products in its recent and regular course of business in direct violation of ATCP 124.04(2) and 124.05(2).

75.    The acts and practices of Kohl's, as alleged herein, were intended and likely to deceive consumers.

76.    The acts and practices of Kohl's, as alleged herein, caused actual damages to Plaintiff and the Class, who did not receive the benefit of their bargain because the actual market value of the products they purchased was materially less than the value Kohl's represented each product had through its "Regular" and "Original" prices. On behalf of themselves and the Class, Plaintiff seeks from Kohl's benefit of the bargain damages.

77.    Additionally, Kohl's deceptive price comparison scheme caused Plaintiff and the Class to purchase more products than they otherwise would have purchased absent the scheme, and further caused them to pay higher prices than they would otherwise have paid for the same merchandise. As a result, Plaintiff and members of the Class are entitled to double the amount that they overpaid, in addition to punitive damages, interest, attorneys' fees and any and all other relief to which they are entitled under Wis. Stat. § 100.20(5).

78.    In addition, Plaintiff seeks and is entitled to a permanent injunction restraining Defendants from continuing to violate Wisconsin law through its price-comparison advertising

scheme. Plaintiff purchased merchandise from Kohl's as part of a "Consumer credit transaction" as defined by Wis. Stat. § 421.301(10). As detailed herein, those transactions were tainted by Kohl's false, misleading, and deceptive conduct related to its illegal and misleading price comparisons. Plaintiff is therefore entitled to seek, and hereby do seek, a permanent injunction to restrain Kohl's from continuing to engage in such conduct, and it "shall not be a defense to an action brought under this section that there exists an adequate remedy at law." Wis. Stat. § 426.109 (1).

## COUNT II

### Unjust Enrichment

79.     Plaintiff incorporates and reallege Paragraphs 1-63 above as though fully set forth herein.

80.     This Claim is brought in the alternative to Count I above.

81.     As a result of Defendants' false price-comparison advertising scheme, Kohl's was unjustly enriched at the expense of Plaintiff and the Class who purchased from Kohl's more products and/or paid higher prices than they would have absent the scheme.

82.     Kohl's intentionally accepted, retained and appreciated the money that Plaintiff and the Class spent purchasing products that were tainted and influenced by the false price comparison advertising scheme.

83.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff and the Class in light of the fact that the products that Plaintiff and the Class purchased from Kohl's did not have the higher value or worth that Kohl's represented they had through its false "Regular" and "Original"

price comparisons, and given that Plaintiff bought more products and/or paid more money than she would have absent the scheme.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants as follows:

1.  For an order that this action be certified as a class action on behalf of the proposed Class, and ordering that Plaintiff and her counsel be appointed as representatives of the Class; and

2.  For an order and judgment preliminarily and permanently enjoining Defendants from employing, utilizing or otherwise publishing false, untrue, and misleading "Regular" or "Original" prices in violation of Wisconsin law;

3.  For an order compelling Defendants to institute policies and procedures which will educate Defendants' employees as to Wisconsin price-comparison advertising laws and assure that such employees follow the law;

4.  For such orders or judgments as the Court may consider necessary to prevent the use or employment of Defendants of any practices which violate Wisconsin law;

5.  For double actual damages, including those measured by either a price-premium paid, or benefit of the bargain that Kohl's represented, but which Plaintiff and the Class did not receive;

6.  For equitable relief, including disgorgement of ill-gotten gains and unjust enrichment obtained by Defendants;

7.  For attorneys' fees and costs;

8.  For pre-judgment interest;

9.      For post-judgment interest; and

10.     For such other and further relief as the court may deem proper.

Respectfully submitted,

**KITNER WOODWARD PLLC**

s/Martin Woodward
Martin Woodward
martin@kitnerwoodward.com
13101 Preston Road, Suite 110
Dallas, TX 75240
Telephone: 214.443.4300

Matthew Zevin (*pro hac vice* forthcoming)
mzevin@aol.com
1106 Stratford Drive
Encinitas, CA 92024
Telephone: 619.235.5306

**KELLER POSTMAN LLC**
Albert Y. Pak (*pro hac vice* forthcoming)
albert.pak@kellerpostman.com
1101 Connecticut Avenue, N.W., 11th Floor
Washington, D.C. 20036
Telephone: 202.918.1123

**LYNCH CARPENTER LLP**
Todd D. Carpenter (*pro hac vice* forthcoming)
todd@lcllp.com
James B. Drimmer (*pro hac vice* forthcoming)
jim@lcllp.com
1234 Camino del Mar
Del Mar, CA 921014
Telephone: 619.762.1910

*Attorneys for Plaintiff and the Proposed Class*

29