# EXHIBIT B

**LYNCH CARPENTER, LLP**
Todd D. Carpenter (234464)
todd@lcllp.com
James B. Drimmer (196890)
jim@lcllp.com
1234 Camino del Mar
Del Mar, CA 92014
Tel:    619-762-1910
Fax:    619-756-6991

**KELLER POSTMAN LLC**
Warren Postman (330869)
wdp@kellerpostman.com
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Tel:    202-918-1870

*Attorneys for Plaintiff and Class Counsel*

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| ROSEMARIE RIVALI, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHUTTERFLY, LLC, a Delaware limited liability company, and DOES 1- 50, inclusive,<br><br>Defendants. | Case No. 37-2023-00019221-CU-BT-NC<br><br>**[E-FILE]**<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN RISH, AND JOAN DECESARE**<br><br>Date:    February 16, 2024<br>Time:    1:30 P.M.<br>Judge:  Cynthia A. Freeland<br>Dept:    N-27 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  THESE FOUR OBJECTIONS SHOULD BE OVERRULED, AND THE COURT SHOULD
     GRANT FINAL APPROVAL OF THE SETTLEMENT ............................................. 2

     A.   Notice to Class Members Went Beyond What Was Required by the PAO ...................... 2

     B.   The Value of The Vouchers Are More Than Adequate ........................................ 5

     C.   The Requested Attorney Fees Are Reasonable And Fall Well Below The 25%
          Benchmark ............................................................................... 9

     D.   The Settlement is a Deterrent ............................................................ 10

     E.   Rozzi's Criticisms of *Coupon* Settlements Are Inapplicable to This *Voucher*
          Settlement ............................................................................. 11

     F.   The Injunctive Relief of This Settlement is Far From Illusory ............................ 12

III. CONCLUSION ..................................................................................... 13

i

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Carnegie v. Household Intern., Inc.*,
(7th Cir. 2004) 376 F.3d 656 ......................................................................................... 9

5

*Chavez v. Netflix, Inc.*,
6    (2008) 162 Cal.App 4th 43 ............................................................................................ 4

7    *Chowning v. Kohl's Dep't Stores, Inc.*,
(C.D. Cal. Mar. 15, 2016, No. CV1508673RGKSPX) 2016 WL 1072129 ................. 7

8

*Hendricks v. Ference*,
9    (9th Cir. 2018) 754 Fed. App'x. 510 ........................................................................... 12

10   *In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......................................................................................... 9

11

*In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and
12      Products Liability Litigation*,
(4th Cir. 2022) 27 F.4th 291 .......................................................................................... 6

13

*In re Online DVD-Rental Antitrust Litigation*
14   (9th Cir. 2015) 779 F.3d 934 ........................................................................................ 12

15   *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation*,
(E.D. Wis. 2016) 316 F.R.D. 240 ................................................................................ 10

16

*In re Target Corp., Customer Data Security Breach Litigation*,
17      (D. Minn. 2014) 66 F.Supp.3d 1154 ........................................................................... 10

18   *In re Tobacco Cases II*,
(2015) 240 Cal.App.4th 779 ........................................................................................... 7

19

*In re Toys R Us-Delaware, Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litigation*,
20      (C.D. Cal. 2014) 295 F.R.D. 438 ................................................................................. 12

21   *Johnson v. Ashley Furniture Industries, Inc.*,
(S.D. Cal. Mar. 7, 2016, No.: 13cv2445) 2016 WL 866957 ....................................... 12

22

*Litwin v. iRenewBioEnergySolutions, LLC*,
23      (2014) 226 Cal.App.4th 877 ........................................................................................... 1

24   *Lowery v. Rhapsody Int'l, Inc.*,
75 F.4th 985 (9th Cir. 2023) ........................................................................................... 9

25

*Schneider v. Chipotle Mexican Grill, Inc.*,
26      (N.D. Cal. 2020) 336 F.R.D. 588 ................................................................................ 10

27   *Smith v. Keurig Green Mountain, Inc.*,
(N.D. Cal., Feb. 27, 2023, No. 18-CV-06690-HSG) 2023 WL 2250264 ................... 10

28

i

1

## **TABLE OF AUTHORITIES (cont.)**

2

**Page(s)**

3

**Cases (cont.)**

4
*Spann v. J.C. Penny Corp.*,
   (C.D. Cal. 2016) 314 F.R.D. 312 ............................................................................. 7

5

**Statutes**

6
28 U.S.C. § 1711 ............................................................................................................ 12

7
28 U.S.C. § 1712 ............................................................................................................ 12

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN RISH, AND JOAN DECESARE

1  Plaintiff and Class Counsel submit this response to Mr. Gavin Rozzi's ("Rozzi"), Mr. Douglas J.
2  Hughes's ("Hughes"), Ms. Joan deCesare's ( "deCesare"), and Ms. Kathryn Rish ("Rish") (collectively,
3  the "Objectors") objections to Class Settlement.[1]

4  ## I.    **INTRODUCTION**

5      Nothing in these four objections to this Settlement addressed in this opposition—out of over
6  24 million Class Members—submitted by Rozzi on or about December 11, 2023 ("Rozzi Obj."), Hughes
7  on or about January 18, 2024 ("Hughes Obj."),[2] deCesare[3] and Rish[4] on or about January 24, 2024 ("Rish
8  Obj."), provides any basis to disturb this Court's Preliminary Approval Order ("PAO"). (See ROA
9  No. 22.) Contrary to Rozzi and Hughes's assertions, the Class Notice satisfied the PAO's requirements,
10 and the Voucher benefit adequately offers Class Members several multiples of their likely actual
11 damages—should they recover anything at all at trial or in most instances, arbitration. Moreover, Class
12 Counsel's requested attorneys' fees are far from unreasonable considering the requested amount equates
13 to *less than 2%* of the Class benefit, a far cry from the typical 25% benchmark. The Settlement also deters
14 future misconduct, especially considering the contractual injunctive relief it provides. Lastly, criticisms
15 of coupon settlements do not apply to this Voucher Settlement currently before the Court.

16     The objections can be roughly consolidated into four points with some overlap: (1) a preference
17 for cash over Vouchers; (2) criticism of the email portion of the Notice; and (3) misunderstanding of how
18 the Settlement addresses future practices; and (4) a problem with the attorneys' fees requested. Notably,
19 the objectors offer no suggestion for what amount of cash compensation or Voucher amount they would
20 consider adequate or what, to Rozzi, an adequate Email Notice would entail. Rozzi further appears to

---

[1] All capitalized terms, unless otherwise defined, have the same definition as those terms in the Settlement Agreement and Release ("SA") (ROA No. 12, Ex. 1.)

[2] It should be noted that Mr. Hughes's objection is procedurally deficient as it was not filed with the Court as required by section 3.8 of the Settlement Agreement and California law. (See *Litwin v. iRenewBioEnergySolutions, LLC* (2014) 226 Cal.App.4th 877, 883-884.)

[3] deCesare's objection is addressed solely in this footnote, as the objection advances no legal or factual argument to deny final approval. The sole basis for her objection is that she is satisfied with Shutterfly's products and services, and therefore does not believe Plaintiff's case has merit. (See Joan deCesare Objection, p. 1.) If that is true, deCesare should have no issue with benefit the Settlement provides to the Class. Additionally, the deCesare objection is procedurally deficient because it was not filed with this Court.

[4] Rish's objection is procedurally deficient as it was not filed with this Court as required by section 3.8 of the Settlement Agreement and California law.

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN RISH, AND JOAN DECESARE

misunderstand the injunctive relief component of the Settlement and conflates it with California law, insinuating that once the terms of this Settlement expire, Defendant can freely violate California law with impunity. Instead, Rozzi accuses both Class Counsel and this Court of "flout[ing] fundamental principles of fairness and equity" and partaking in a "court-supervised promotional campaign." (See Rozzi Obj. at pp. 2, 10.) As for Hughes' objection, it supports Class Counsel's fee request because in every case he cites, the fee request was a significantly greater than percentage of the class benefit than the 2% requested here. In short, these objections are meritless and should not forestall a significant and immediate benefit to over 24 million Class Members.

## II.    THESE FOUR OBJECTIONS SHOULD BE OVERRULED, AND THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.    Notice to Class Members Went Beyond What Was Required by the PAO

Rozzi first takes issue with the administration of the Email Notice, complaining that the email campaign was sent without encryption and that multiple email addresses were used to disseminate the Email Notice. (Rozzi Obj. at 4; but see Declaration of Richard W. Simmons in support of Plaintiff's Motion for Final Approval of Class Action Settlement, filed concurrently herewith ("Simmons Decl."), ¶¶ 23, 46.) Rozzi further questions the legitimacy of the Email Notice because of the alleged "unusual nature of the compensation being a voucher." (See Rozzi Obj. at 6.) In an attempt to support his position, Rozzi points to social media posts on Reddit and online articles questioning the validity of the Email Notice campaign. Suspicions about spam and phishing are reasonable. But even assuming the Court would accept at face value the authenticity of the posts, as well as the credibility of those who authored them, the authors of these posts actually *confirm* the legitimacy of the Class Notice. (See *ibid.* and discussion below.) From these social media posts, Rozzi makes the conclusory allegation that the Claims Administrator "fail[ed] to follow reasonable due diligence in the configuration of the email addresses used to deliver class notices," and has "flouted even the most basic information technology/data security practices . . ." (See *id.* at p. 5.)

As an initial matter, Analytics Consulting LLC ("Analytics"), the Claim Administrator here, has consulted for 53 years regarding the design and implementation of legal notice and claims management programs relating to class action litigation. (See Simmons Decl., ¶ 5.) Indeed, Analytics has been under

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN RISH, AND JOAN DECESARE

contract with the Federal Trade Commission since 1998, the Department of Justice since 2012, and the Securities and Exchange Commission since 2013—in fact, all three of these federal agencies have renewed multi-year contracts with Analytics in 2023. (See *id.* at ¶ 6.)  Based on the foregoing, Analytics' has the unquestioned credentials to both administer the Notice program here and address Rozzi's objections.

Rozzi argues that the Email Notices should have been encrypted, which he claims—without a shred of legal or factual authority—is "a standard practice used by all modern email service providers." (Rozzi Obj. at 4.) But as clarified in Simmon's declaration, server-to-server encryption of emails is not a best practice associated with the delivery of mass emails. (See Simmons Decl., ¶¶ 16-17, 44-45, 47.) The President of Analytics, Richard W. Simmons,[5] has explained—under oath—that he is not aware of *any* email service providers who have stated that encryption is a best practice associated with the delivery of mass emails, specifically those to administer a Notice program. (See Simmons Decl., ¶ 44.) Even if it were, encryption is designed to protect confidential information and information of a private nature.  Here the direct email portion of the Class Notice does not contain confidential information such as bank statements or other financial information, reducing the need for encryption. (See *id*. at ¶ 45.) Lastly, encryption (or lack thereof) is not a major factor in an email inbox provider's analysis of whether an email is considered spam. (See *ibid.*)

Second, Rozzi takes issue with multiple email domains being utilized to accommodate the sheer volume of Email Notices that were being sent to Class Members. (See Simmons Decl., ¶¶ 23, 46-47.) Notice was sent to 25,082,780 unique email addresses, averaging 1,672,185 emails per day. (See *id.* at ¶ 25.) To illustrate the effectiveness of using multiple email addresses, the first iteration of Email Notices took 15 days to complete. (See *ibid.*) In comparison, the second round of Email Notices—utilizing a single email address—took 30 days to complete. (See *id.* at ¶ 27(C).) As explained more thoroughly in ¶ 23 of Mr. Simmon's concurrently filed declaration:

> Multiple domains were used to send the campaign to result in the highest chance of email delivery due to the large volume of mails being sent in a short period of time.  Each domain was setup, so that if it was visited in a web browser, the visitor would automatically be

---

[5] Mr. Simmons joined Analytics in 1990 and has 33 years of experience in designing and implementing class action settlements and notice campaigns. Mr. Simmons has authored books, papers, best practices, CLE programs, and has been a panelist at workshops regarding class action notice and class action claims administration. Mr. Simmons has also worked alongside the CFPB and the FTC to assist them in their research on the subject of class actions. (See Simmons Decl., ¶¶ 7–11.)

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN RISH, AND JOAN DECESARE

1

2

directed to the settlement website.  For a mailing with a short time frame, this process breaks a larger mailing into smaller segments, and minimizes email inbox spam filters from systematically impacting the delivery of Class Notices.

3

Thus, the use of multiple email domains *enhanced* the effectiveness of the Notice campaign.

4

5

6

7

8

9

10

11

12

13

14

15

16

Third, Rozzi takes issue with the form of the Class benefit, arguing that compensation in the form of a Voucher is "unusual" and somehow makes the notice more suspect. (See Rozzi Obj. at 6.) This is demonstrably false as numerous courts, including this one, have approved settlements where the relief was in-kind. (See, e.g., *Aberl et al. v. Ashley Global Retail, LLC* (2023) (Super. Ct. S.D. County, No. 37-2023-00011536-CU-BT-NC) [approving $30 vouchers]; *Chavez v. Netflix, Inc.* (2008) 162 Cal.App 4th 43, 55 [approving $6 vouchers]; *Petkevicius v. Lamps Plus Inc.* (Super. Ct. S.D. County, No. 37-2019-00020667-CU-MC-CTL) [approving $20 vouchers]; *Olmedo v. PVH Retail Stores LLC* (Super. Ct. S.D. County, No. 37-2019-00003250-CU-MT-CTL) [approving $10 vouchers]; *Rael v. RTW Retailwinds Inc*. (Super. Ct. S.D. County, No. 37-2019-00003850-CU-MT-CTL) [approving $7.50 vouchers]; *Courtney Dennis v. Ralph Lauren Corp., et al.* (Super. Ct. S.D. County, No. 37-2018-58462-CU-MC-CTL) [approving $10 vouchers]; *Maria Ramos v. PVH Corporation* (Super. Ct. Sac. County, No. 34-2018-234829-CU-NP-GDS) [approving $6.50 vouchers]; *Adam Press, et al. v. J. Crew Group, Inc., et al.* (Super. Ct. Ventura County, No. 56-2018-00512503-CU-BT-VTA) [approving $8 vouchers].)

17

18

19

20

21

22

23

24

The last issue Rozzi has with the Notice program is, in his eyes, the Notice program caused confusion amongst the Class Members. (See Rozzi Obj. at 4.) Rozzi's only purported evidence of consumer "confusion" from the notice is a single post on the Reddit website. (See Rozzi Obj. at 6.) However, Rozzi ignores comments within the *same* Reddit post that indicate that the consumers did understand the contents of the Notice and that it was a legitimate settlement notice. Indeed, the original poster (or "OP")[6] confirmed in additional comments—not mentioned by Rozzi—that the email was legitimate and that they had confirmed this with Shutterfly, and even shared the Settlement Website address and email address Class Members could contact if they still had questions.[7] Moreover, the top two

25

26

27

28

---

[6] "The person who creates a post that others are now replying to, or that first post itself, is the OP. So when someone says OP in this context, they're referring to the person who made the original post, or to the original post itself." See Business Insider, OP Meaning, <https://www.businessinsider.com/guides/tech/op-meaning> [as of Jan. 3, 2024].

[7] See Reddit <https://www.reddit.com/r/Scams/comments/17g0ab2/comment/k6no0of/> [as of Jan. 3, 2024].

4

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN RISH, AND JOAN DECESARE

comments on the post (as of January 3, 2024) confirm the validity of the Class Settlement.[8] Rozzi also cites an article *confirming* the legitimacy of the Shutterfly Settlement.[9] It is clear, even from the sources Rozzi cites, that the Notices have not caused "widespread" confusion—especially considering there have been over 861,000 Claims made.

Rozzi then goes so far as to argue that the Notice should be started over from the beginning.[10] However, in accordance with Analytics' best practices, the Parties sent a *second* Email Notice after completing the first round of Notices—going beyond what was required by the PAO. (See Simmons Decl., ¶¶ 26-28.) Moreover, this second Notice was sent with TLS encryption between servers, and the Email Notices were sent from a single domain (see *id.* at ¶ 47)—thus mooting all of Rozzi's misguided criticisms of the Notice process. This second round of Email Notices began November 23, 2023, and was completed on December 22, 2023. (See *id.* at ¶ 27(C).) This second round of Notice was already in process when Rozzi's objection was received. (See *id.* at ¶¶ 26, 47.)  Moreover, the sheer volume and quality of the response in comparison with other consumer settlements belies any need to "redo" what was already done correctly.

## B.    The Value of The Vouchers Are More Than Adequate

Rozzi, Rish, and Hughes next attack the form and value of the Voucher benefit; Rozzi says it "fails to provide adequate compensation," and both Rozzi and Rish take issue with it being usable "only at Shutterfly. (Rozzi Obj. at 8; Rish Obj. at 1.) While Hughes claims that "[t]here is, I think quite obviously, no genuine benefit from the settlement proposed here to the Class Members. . . ." and that he "would like to receive a check for at least some amount . . ." (See Hughes Obj. at pp. 4-5.) It is clear the Objectors prefer a cash benefit instead of the Voucher; however, neither Rozzi nor Hughes advance a damage

---

[8] See Reddit https://www.reddit.com/r/Scams/comments/17g0ab2/is_this_notice_of_settlement_a_scam/ [as of Jan. 3, 2024].

[9] See WKYC, Yes, Shutterfly class action lawsuit settlement emails are real <https://www.wkyc.com/article/news/verify/settlements-verify/shutterfly-class-action-settlement-rivali-v-shutterfly-llc-emails-real-legit-fact-check/536-14988956-255c-4e8a-b4cb-11c675c3a081> [as of Jan. 3, 2024].

[10] While it is unclear to Plaintiff and counsel whether Rozzi is a professional objector, Class Counsel is informed that Rozzi has been in communication with Theodore Frank (via Twitter), a widely known professional objector and open advocate for class action reform with ties to conservative organizations such as the American Enterprise Institute and Federalist Society. (See Wikipedia, Ted Frank, https://en.wikipedia.org/wiki/Ted_Frank [as of Jan. 21, 2024]; see also https://twitter.com/gavroz/status/1731664431883456779?s=46&t=HRc-brGNS0rPjSMRm2TTjQ)

5

1  calculation for an amount of cash they would be satisfied with, nor do they provide any authority finding

2  a voucher benefit improper. (See Rozzi Obj. at 8; Hughes Obj. at pp. 4-5.)

3      Preliminarily, the objections fail to consider the $5 and $25 Voucher amounts are potentially

4  greater than each Class Member's actual damages—and thus the cash amount that Class Members could

5  hope to recover even after Plaintiff's best day at trial. (See Declaration of Todd D. Carpenter in support

6  of Plaintiff's Motion for Final Approval of Class Action Settlement, filed concurrently herewith

7  ("Carpenter Decl."), ¶¶ 11-13.) Prior to filing the Federal Court Action, Class Counsel investigated

8  Defendant's pricing practices. (See *id.* at ¶ 5-6, 11.) Class Counsel supplemented its pre-suit investigation

9  with confidential information provided by Defendant's Counsel in advance of mediation. (See *id.* at 11-

10  12.) Based on the pre-suit investigation and the information provided by Defendant's Counsel, Class

11  Counsel was able to analyze potential damages and assess the likelihood of presenting a viable damages

12  model at trial.[11] (See *ibid.*) This preliminary analysis indicated that damages at trial would likely be less

13  than the Voucher amount. (See *ibid.*)

14      Rather than attempting to resolve the case by compensating Class Members for their projected

15  actual damages, Class Counsel and Plaintiff elected to use the Voucher structure to deliver something of

16  *tangible and immediate value* to the Class that would make it worthwhile for Class Members to make a

17  Claim.[12] (See Carpenter Decl., ¶ 13.) The Vouchers in this Settlement accomplish this objective. (See

18  *ibid.*) Class Counsel made a judgment call based on nearly twenty years of class action experience and the

19

20  [11]  Class Counsel has retained economic consultants over the years to evaluate whether feasible
21  methodologies exist to calculate class-wide damages for false reference pricing cases such as this one.
   Typically, these methodologies involve either an induced demand method, a hedonic regression method,
22  or a cost valuation method. A regression model is the most popular methodology because a regression
   analysis can estimate the relevant demand parameters using data on the appropriate product market and
23  promotions. This approach to identifying demand parameters in differentiated product markets is standard
   in the economics literature. (See Steven Berry, et al., *Automobile Prices In Market Equilibrium* (July
   1995) 63 Econometrica 841, 841–890; Steven T. Berry & Philip Haile, *Identification in Differentiated*
24  *Product Markets* (2016) 8 Annual Rev. Econ. 27, 27–52). Alternatively, a regression model can estimate
   the artificial increase in demand by measuring the effect of an external reference price (*i.e.*, the
25  strikethrough pricing scheme) on the probability that consumers want to buy the item. (See Richard A.
   Briesch, et al., *A Comparative Analysis of Reference Pricing Models* (1997) 24 J. Consumer Rsch. 202,
26  206, 212–213.)

27  [12] (See *In re Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and
   Products Liability Litigation* (4th Cir. 2022) 27 F.4th 291, 296 ["class members electing to receive a cash
28  award would collect approximately 5.5% of their original flooring purchase price, while those members
   opting to receive a voucher would recover approximately 59% of the average flooring purchase price."].)

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN
RISH, AND JOAN DECESARE

advice of class action notice professionals. (See *ibid.*) The decision to utilize a Voucher is partially derived from similar consumer class action settlements where consumers who had a choice between store credit and an *equal* amount of cash—largely elected to receive store credit. (See *Spann v. J.C. Penney Corp.* (C.D. Cal. 2016) 211 F.Supp.3d 1244, 1253 ["[The claims administrator] received 60,985 timely paper claims and 98,037 electronic claims for a total of 159,022 claims. Of those, 102,502 requested store credit, 56,089 requested a cash payment, and 431 had not yet been processed."].) Class Counsel determined that pursuing a claim-in voucher-based Settlement valued at nearly ten times the cash value of any recovery *at trial* was a better option than resolving the case for very nominal cash payments that would not encourage Class Members to make Claims.

Further, a significant fact which bears repeating is that any potential cash payment (however nominal) can only be assumed if Plaintiff succeeds in all stages of litigation. The Objectors overlook the risks inherent in continued litigation—especially considering the state of the law regarding the appropriate method for calculating restitution in these types of pricing cases is in flux. The Ninth Circuit in *Chowning v. Kohl's Dep't Stores, Inc.*, found that monetary relief may not be available in pricing cases where the amount paid by a plaintiff does not exceed the actual value of the items purchased. (See *Chowning v. Kohl's Dep't Stores, Inc.* (C.D. Cal. Mar. 15, 2016, No. CV1508673RGKSPX) 2016 WL 1072129, at *13, aff'd (9th Cir. 2018) 735 Fed.Appx 924, amended on denial of reh'g (9th Cir. 2018) 733 Fed.Appx 404, and aff'd (9th Cir. 2018) 733 Fed.Appx 404.) Further, the form of compensation must be assessed considering the difficulty Plaintiff would face proving liability and damages at trial. "Even if plaintiff were to prevail at trial, there is a very real risk that plaintiff would recover nothing." (*Spann v. J.C. Penny Corp.* (C.D. Cal. 2016) 314 F.R.D. 312, 326; see also *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 802 [declining to award restitution because plaintiffs failed to establish a price/value differential despite prevailing on liability under California's Unfair Competition Laws and California's False Advertising Law].)

The Objectors also overlook that the Voucher is an appropriate form of compensation because the allegations at issue in the lawsuit center around the *Defendant's* pricing practices, which allegedly inflated the perceived *value* of its products, and thereby allowed it to charge more than it should have. Thus, the

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN RISH, AND JOAN DECESARE

Voucher serves to return that alleged value to the consumer—and because the Defendant implemented the pricing practices on its e-commerce website, it makes sense that the Vouchers are available for use there.

Aside from the Voucher format, both Objectors complain about the value of the Vouchers, though without ever going so far as to suggest an acceptable alternative amount. Rozzi states the "settlement fails to provide adequate compensation" and Hughes believes there is no actual value to class members. (See Rozzi Obj. at p. 8; Hughes Obj. at p.4-5.) But the Vouchers clearly do provide value to Class Members as there are hundreds of products that can be purchased full stop without Class Members paying anything out of pocket.[13] Indeed, Shutterfly's website even has a webpage dedicated to "gifts under $25" that Class Members can use to easily find items to spend the Vouchers on without spending of their own money.[14] In that respect, the Settlement provides an undeniable benefit to the Class Members.

Rish and Rozzi likewise raise concerns that Shutterfly will receive a benefit from this Settlement because it will drive further business. (See Rozzi Obj. at 10; Rish Obj. at 1.) However, these concerns can be easily dismissed as well when considering, again, the sheer volume of items available for $25 or less.[15]

Lastly, Rozzi finds the Voucher relief inadequate for him and "for those class members who have no intention to use the services of Shutterfly." (Rozzi Obj. at 8.) But if Rozzi (who has only provided evidence of making a single purchase from Shutterfly on one occasion) is not interested in making any Voucher-based purchases from Shutterfly and would instead prefer a nominal cash amount, it begs the question of why he chose to object to the Settlement instead of opting out in order to pursue his own

---

[13] At any given time, Shutterfly has thousands of items for sale at $25 or less, meaning Claim-in Class Members would not be required to come out-of-pocket to make a purchase. These items include photo books, cards and stationery, wall art, calendars, as well as home décor for the office, kitchen, and outdoors. (See https://www.shutterfly.com.) For instance, Hughes' objection claims that he has purchased holiday cards from Shutterfly every year since 2007. (See Hughes Obj. at p. 2.) Therefore, the $25 Voucher would buy Hughes approximately 20 cards in the next holiday season because holiday cards on Shutterfly.com start at 98 cents per card. (See Shutterfly, Lunar New Year Cards, https://www.shutterfly.com/t/lunar-new-year/ [as of Jan. 29, 2024]; Shutterfly, Valentine's Day Cards, https://www.shutterfly.com/t/valentines-day-cards-stationery/ [as of Jan. 29, 2024]. Moreover, the one-year expiry period year ensures that Class Members redeeming their Vouchers for holiday cards will be able to use it for *any* holiday. (See SA §§ 1.17, 1.36.)

[14] (See Shutterfly, Gifts Under $25, https://www.shutterfly.com/personalized-gifts/gifts-under-25/ [as of Jan. 29, 2024] [products under $25 include personalized: ceramic mugs, kids cups, framed tabletop prints, photo magnets, notebooks, tote bags, reusable shopping bags, tea towels, metal luggage tags, wine and shot glasses, and others].)

[15] (See *supra* fn.14.)

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN RISH, AND JOAN DECESARE

individual arbitration.[16] Indeed, Judge Posner once stated, "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." (*Carnegie v. Household Intern., Inc.* (7th Cir. 2004) 376 F.3d 656, 661 (emphasis original).)

### C.     The Requested Attorney Fees Are Reasonable And Fall Well Below The 25% Benchmark

Hughes's objection primarily focuses on the attorneys' fees requested,[17] arguing (very incorrectly) that the Settlement only benefits Class Counsel and citing various cases that either fail to support his claims or support the requested fee award. Hughes cites *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 994 (9th Cir. 2023), and *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011), but both of those cases, the attorneys' fees represented a ***far*** greater percent of the class benefit than the requested amount here. Most notably, in *Lowery*, the class recovery was just over $50,000—while class counsel requested $1.7 million in attorney fees (***30 times*** the amount of benefits the class received). (See *Lowery v. Rhapsody Int'l, Inc., supra*, 75 F.4th 988.) Similarly, in *In re Bluetooth*, the fee request was 37.2% of the common fund and the court remanded the case to determine the value of the injunctive relief component of the settlement, directing the lower court to re-evaluate the fee request using the 25% benchmark after accounting for the value of the injunctive relief within the common fund. In stark contrast, the fee request here is less than 2% of the Class benefit.[18] Using the same math, 25% of the likely Class benefit here would equate to a staggering $34.25 million fee, nearly 15 times greater than the $2.4 million actually requested.

---

[16] This raises an additional point overlooked by Rozzi—all Class Members in this Action were subject to arbitration clauses. It was only through Class Counsel's unique ability to leverage a potential mass arbitration campaign that this Settlement was made possible. Without Class Counsel, there would be no Class Settlement and all aggrieved consumers, like Rozzi, would be forced to individually arbitrate their claims.

[17] Hughes argues that "any settlement should [] (1) have some actual value to the plaintiff class members, and (2) reflect some correlation between the benefit received by the class members and the attorneys fees awarded to class counsel." (Hughes Obj. at p.3.)

[18] As of February 5, 2024, 24,094,679 Class Members received direct Notice, and 861,676 Claims have been submitted. (See Simmons Decl. at ¶¶ 28, 40.) As a result, under the preliminary-approved Settlement, Defendant is currently estimated to distribute approximately $21,541,900 in $25 Vouchers to Class Members who submitted Claims and an additional $116,165,015 worth of $5 Direct Benefit Vouchers to the remaining 23,233,003 Class Members who have not submitted Claims but received direct Email Notice. Combined, this results in $137,706,915 worth of Vouchers being distributed to the Class. Thus, $2,400,000/$137,000,000 = 0.0175 or 1.75%.

9

1    Hughes goes on to cite four more cases that he describes as similar, but which are either

2  inapplicable[19] or granted fee percentages far greater—*more than ten times*—than what is requested here.

3  (See *In re Target Corp., Customer Data Security Breach Litigation*, 66 F.Supp.3d 1154 (D. Minn. 2014)

4  (order on a motion to dismiss that does not discuss attorney fees, though attorney fees were granted on

5  appeal amounting to 29% of the common fund); *Spillman v. Domino's and RPM Pizza, LLC*, (M.D. La.,

6  May 23, 2013, No. CIV.A. 10-349-BAJ) ECF. No. 242 at 2, 5-7, 11, 17 (Applying the Fifth Circuit's

7  *Johnson* factors to determine the reasonableness of fee award, Louisiana district court reduced the fees

8  from 29% to 26% of the common fund). Likewise, in the single California case Hughes does cite, the court

9  awarded a fee *above* the Ninth Circuit's 25% benchmark. (See *Smith v. Keurig Green Mountain, Inc.*

10  (N.D. Cal., Feb. 27, 2023, No. 18-CV-06690-HSG) 2023 WL 2250264, at *9-10 ["courts have awarded

11  similar fees in comparable cases … the Court finds that an increase above the 25% benchmark is warranted

12  here, and that 30% of the common fund is appropriate under the circumstances."].)[20]

13    Thus, in addition to the procedural deficiencies in Hughes' objection, the cases Hughes cites only

14  support the reasonableness of Class Counsel's fee request, and nothing in the objection detracts from the

15  reasonableness of Class Counsel's fee request.

16         **D.    The Settlement is a Deterrent**

17    Rozzi speculates that the Settlement's deterrent effect is questionable because Class Members are

18  unlikely to redeem their Voucher. Therefore, according to Rozzi, the Settlement does not disgorge the

19  Defendant's ill-gotten gains or make the consumer whole. (See Rozzi Obj. at 8-9.) But this argument is

20  belied completely by the fact that Rozzi is *only* one of five objectors to the Settlement ***out of more than***

21  ***24,000,000 Class Members***. It is further belied by the fact that over 861,000 $25 Voucher Claims have

22  been made. (See Simmons Decl., ¶¶ 13, 40, 52.) In short, Rozzi has no basis to assume that Class Members

23  share his preference for not redeeming their Vouchers, and further provides no factual or legal citations to

24  support his argument here (See *ibid.*)

25
26  [19] (See *In re Subway Footlong Sandwich Marketing and Sales Practices Litigation* (E.D. Wis. 2016) 316
     F.R.D. 240, 248, rev'd (7th Cir. 2017) 869 F.3d 551 (settlement only involved injunctive relief, though
27  Hughes incorrectly states that the settlement distributed coupons despite the coupons being an objector's
     idea that was rejected by the court).)
28  [20] See e.g., *Schneider v. Chipotle Mexican Grill, Inc.* (N.D. Cal. 2020) 336 F.R.D. 588, 601-602 (awarding
     30% of the common fund.)

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN
RISH, AND JOAN DECESARE

Indeed, confidential data provided to Class Counsel prior to mediation, indicates that Class

Members, on average, made multiple purchases from Shutterfly during the Class Period. (See Carpenter

Decl., ¶ 13.) This highlights a key difference from Rozzi, who appears to have only made a single

Shutterfly purchase during the Class Period. (See Rozzi Obj. at 3.) As stated above, the fact that actual

damages—assuming Plaintiff wins at all stages of litigation—are well under $5 strongly contradicts

Rozzi's claim that the Settlement does not make the Class Members whole. Moreover, Class Members

who claimed their benefit will have hundreds of options to purchase items from Defendant without having

to come out of pocket as Shutterfly offers hundreds of products at $25 or less.[21] Thus, the Settlement

returns significant value to Class Members, cutting into Shutterfly's profit margins, and also provides

injunctive relief, all of which add up to a significant deterrent effect against future misconduct.

Last on this point, Rozzi argues, "[i]n practice, this voucher compensation regime could likely end

up having the effect of inadvertently increasing Shutterfly's sales, especially from consumers like

Objector who presently have no desire to engage in continued purchases from, thereby benefitting rather

than penalizing the Defendant …" (Rozzi Obj. at 10.) It is unclear how the decision *not* to redeem

Vouchers could increase Defendant's sales, as that requires Class Members to make purchases (and, for

that matter, purchases beyond the value of the Voucher). Perhaps Rozzi meant to say that unredeemed

Vouchers impose no further *costs* on Shutterfly, thereby reducing the overall cost of Settlement on it,

though this would stand in contradiction to his prior assertion that "[t]he settlement's deterrent effect is

questionable, as it potentially boosts Shutterfly's sales rather than imposing a tangible cost on the

Defendant …" (Rozzi Obj. at 8.) At any rate, this argument is largely incoherent and should be disregarded

by the Court.

E.     **Rozzi's Criticisms of *Coupon* Settlements Are Inapplicable to This *Voucher* Settlement**

Throughout his Objection, Rozzi conflates coupon and voucher settlements as if they are one in

the same. (See Rozzi Obj. at 9-10.) In short, coupon settlements require class members to spend their own

---

[21] In fact, Shutterfly has a section of its website dedicated to personalized gifts under $25. (See Shutterfly, Gifts Under $25, https://www.shutterfly.com/personalized-gifts/gifts-under-25/ [as of Jan. 2, 2024] [products under $25 include personalized: ceramic mugs, kids cups, framed tabletop prints, photo magnets, notebooks, tote bags, reusable shopping bags, tea towels, metal luggage tags, wine and shot glasses, and others].)

11

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN RISH, AND JOAN DECESARE

money to redeem the benefit; vouchers do not. In an attempt to criticize the Settlement's voucher structure, Rozzi cites a law review article critiquing *coupon* settlements. (*Ibid.*) This Settlement does not call for a distribution of coupons within the meaning of the Class Action Fairness Act (CAFA). (See *In re Online DVD-Rental Antitrust Litigation* (9th Cir. 2015) 779 F.3d 934, 949–952 (*Online DVD*); see also 28 U.S.C. § 1712.) Although CAFA does not apply here (it only applies to class settlements in federal court)—even if it did, the Vouchers would not be considered "coupons." While CAFA does not expressly define the term "coupon,"[22] the Ninth Circuit has developed a three-part test for identifying a "coupon" settlement: (1) whether class members have to pay out of pocket to take advantage of the credit; (2) whether the credit is valid only "for select products or services," and (3) how much flexibility the credit provides, such as whether the credit is freely transferable or has a short expiration. (See *Online DVD*, *supra*, 779 F.3d at 951.)

The Vouchers here are not coupons because (1) Class Members can purchase from hundreds of Shutterfly products with the Vouchers without paying out-of-pocket and can be used in conjunction with an available free shipping code;[23] (2) the Vouchers are not limited by product type and can be used on anything Defendant offers on its e-commerce website; (3) the Vouchers are freely transferable without restriction, and although the Vouchers expire they carry a long expiration period of one year. Considering these factors, even if CAFA applied to this Settlement (and it does not), the Vouchers are not coupons.[24]

## F.    The Injunctive Relief of This Settlement is Far From Illusory

Finally, Rozzi conflates the Settlement's contractual injunctive relief with California law. (See Rozzi Obj. at 11 ["This stipulation implies a temporary adherence to legal standards, raising the question

---

[22] See 28 U.S.C. § 1711.

[23] As stated in section IV above, Shutterfly offers hundreds of items at $25 or less, and Shutterfly's website contains a webpage specifically for products priced at less than $25. (See Shutterfly, Gifts Under $25, https://www.shutterfly.com/personalized-gifts/gifts-under-25/ [as of Jan. 2, 2024]; see also SA §§ 1.17, 1.36. )

[24] (See, e.g., *Hendricks v. Ference* (9th Cir. 2018) 754 Fed. App'x. 510, 512–13 ["CAFA's coupon provision does not apply to all non-cash settlements—it is limited to coupon settlements . . . a voucher that is sufficiently usable and related to the harm suffered can be acceptable under *Online DVD Rental*"]; *Johnson v. Ashley Furniture Industries, Inc.* (S.D. Cal. Mar. 7, 2016, No.: 13cv2445) 2016 WL 866957, at **4, 6 [$25 merchandise vouchers were not coupons where thousands of items under $25 were available for sale although Ashley stores primarily sell furniture"]; *In re Toys R Us-Delaware, Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litigation* (C.D. Cal. 2014) 295 F.R.D. 438, 460 [claims-made voucher benefit of $5-$30 where vouchers expired in six months were not coupons because they did not require class members to spend money to realize the settlement credit].)

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN RISH, AND JOAN DECESARE

1  of the company's commitment to fair business practices beyond this brief period."].) But to be clear, the

2  two-year injunctive relief component contained in the Settlement Agreement does nothing to insulate

3  Defendant from future alleged violations of any state or federal pricing laws. If at any point—within the

4  two-year injunctive period or after—Defendant no longer complies with California law with respect to

5  how it displays prices for products on Shutterfly.com, any consumer could seek to litigate or arbitrate

6  against Defendant. In short, the Settlement does not grant Defendant immunity from California (or other

7  states') consumer protection laws after the expiration of the two-year injunctive relief period.

8  **III.    CONCLUSION**

9         For the foregoing reasons, nothing in these objections should disturb this Court's Order that this

10 Settlement is the product of serious, informed, non-collusive negotiations and is fair, reasonable, and

11 adequate.[25] Plaintiff urges the Court not to let these four objections—out of more than ***24 million*** Class

12 Members—forestall the tangible and immediate benefit that Plaintiff and Class Counsel seek to provide

13 to these Class Members. Plaintiff respectfully requests that the Court grant Final Approval of the

14 Settlement, Plaintiff's unopposed motion for attorneys' fees and costs in the amount of $2,400,000 and

15 Individual Settlement Award to Plaintiff in the amount of $12,500.

16 Dated: February 6, 2024                          **LYNCH CARPENTER, LLP**

17                                       By:   */s/Todd D. Carpenter*

18                                            Todd D. Carpenter (234464)
                                             todd@lcllp.com
19                                            James B. Drimmer (196890)
                                             jim@lcllp.com
20                                            1234 Camino del Mar
                                             Del Mar, CA 92014
21                                            Tel.:   619-762-1910
                                             Fax:   619-756-6991
22
                                             **KELLER POSTMAN LLC**
23                                            Warren Postman (330869)
                                             wdp@kellerpostman.com
24                                            150 N. Riverside Plaza, Suite 4100
                                             Chicago, IL 60606
25                                            Tel:   202-918-1870

26                                            *Attorneys for Plaintiff and Class Counsel*

27

28 ──────────────
   [25] (See ROA No. 22.)

PLAINTIFF'S RESPONSE TO THE OBJECTIONS OF GAVIN ROZZI, DOUGLAS HUGHES, KATHRYN
RISH, AND JOAN DECESARE